UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:19-CV-00184-JHM**

**GRANITE STATE INSURANCE COMPANY**                                        **PLAINTIFF**

**V.**

**STAR MINE SERVICES, INC.**                                                            **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Plaintiff's Motion to Strike or, in the Alternative, Dismiss Defendant's Counterclaim [DN 24] and Defendant's Motion for Leave to File Counterclaim. [DN 30]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's Motion for Leave to File Counterclaim is **DENIED**.

**I.   BACKGROUND**

Defendant Star Mine Services, Inc. ("Star Mine" or "Defendant") is a now-defunct staffing services company based in Madisonville, Kentucky. [DN 1 ¶ 2, DN 29 at 1]. In early 2018, Plaintiff Granite State Insurance Company ("Granite State" or "Plaintiff") issued Star Mine a one-year workers' compensation and employers' liability insurance policy. [DN 1 ¶ 5]. A dispute arose during that year, leading Granite State to cancel the policy three months early. [*Id*. at ¶ 15]. Star Mine dissolved soon after.

When the dust settled, Granite State sued Star Mine for unpaid premiums from the nine-month period the policy was effective. [*Id*. at ¶¶ 19–21]. Granite State alleged Breach of Contract and Unjust Enrichment as alternative causes of action. [*Id*. at ¶¶ 22–42]. Nearly seven months after Star Mine answered the complaint, it filed a competing Breach of Contract counterclaim against Granite State. [DN 18]. Notably, the counterclaim seeks relief for the

1

"economic losses" that Star Mine suffered as a result of the alleged breach. [*Id*. at ¶¶ 17–18]. Star Mine's basic theory is that Granite State breached the contract by cancelling without sufficient notice. The lack of notice meant that Star Mine could not secure alternative insurance before the policy cancellation took effect. [*Id*. at ¶¶ 11–14]. Since Star Mine could not operate without insurance, it was forced to shut down and terminate all its employment contracts, causing significant economic losses. [*Id*. at ¶¶ 15–18]. Star Mine did not seek leave before asserting the counterclaim.

Granite State brings the instant motion to strike, or in the alternative, dismiss Star Mine's counterclaim. [DN 24]. Granite State asserts that Star Mine's counterclaim should be stricken because it did not seek leave to amend and even if it did, the counterclaim cannot survive a motion to dismiss. In return, Star Mine both (1) responded to Granite State's motion on the merits [DN 29] and (2) filed a belated motion to amend its answer to assert a counterclaim. [DN 30]. Both motions are now before the Court.

## II. DISCUSSION

The first issue is whether the Court can accept Defendant's belated motion for leave or, instead, whether the counterclaim must be stricken because Defendant did not seek leave to amend before filing. Under Federal Rule of Civil Procedure 15, a party may amend a pleading as a matter of course within twenty-one days of service. FED. R. CIV. P. 15(a)(1). After that twenty-one-day window, amendments require consent of the opposing party or leave of court. FED. R. CIV. P. 15(a)(2). If a party amends a pleading without leave of court or opposing party consent, "it may either be considered a nullity or taken as properly introduced 'as long as the amendments do not unfairly surprise or prejudice the defendant.'" *Mattingly v. Jeff Ruby's Louisville, LLC*, No. 3:18-cv-565, 2019 WL 7407708, at *2 (W.D. Ky. Feb. 6, 2019) (quoting

*Hicks v. Resolution Trust Corp.*, 767 F. Supp. 167, 170 (N.D. Ill. 1991)) (internal citation omitted). Even though Defendant amended its pleading to assert a counterclaim nearly seven months after it filed its answer and did not seek leave to amend, the Court can accept the belated motion if leave is otherwise proper under Rule 15.

The second issue, therefore, is whether leave to amend is proper under Rule 15(a)(2). Rule 15(a)(2) embodies a permissive policy toward amended pleadings—"[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2); *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016). A district court may deny a motion to amend, however, because of (1) undue delay, (2) "bad faith or dilatory motive" by the party seeking to amend, (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) undue prejudice to the opposing party, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff argues the Court should deny leave to amend because the proposed counterclaim will result in undue delay and cause undue prejudice.

"Ordinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). There must also be prejudice to the opposing party or a burden on the court. *Id*. While courts construe Rule 15(a)(2) liberally, "at some point 'delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'" *TIG Ins. Co. v. Hosp. Corp. of Am.*, No. 1:11-cv-43-JHM, 2014 WL 3118863, at *7 (W.D. Ky. July 7, 2014) (quoting *Morse*, 290 F.3d at 800 (6th Cir. 2002)). "Courts typically find undue delay in cases that are post judgment . . . and in cases where discovery has closed and dispositive motion deadlines have passed." *Id.* (quoting *Owners Ins. Co. v. Hutsell*, No. 2:12-cv-419, 2014 WL 2460132, at *3 (E.D. Tenn. June 2, 2014)). There is undue prejudice when the new claim "significantly delay[s]

the resolution of the dispute" or requires the opposing party to "expend significant additional resources to conduct discovery and prepare for trial." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). The Court will consider each factor in turn.

### A. Delay

The counterclaim is undoubtedly delayed. The counterclaim arises out of the same contract and course of action as Plaintiff's original complaint, and the facts underlying the counterclaim were known at the time of the alleged breach. For example, one of Defendant's breach of contract theories is that Plaintiff did not provide proper cancellation notice. [DN 18 ¶ 11]. Defendant would only need to take one look at the insurance policy to determine whether Plaintiff complied with the notice provision. Yet, despite Defendant's prior knowledge, it did not bring this claim until seven months after it answered the complaint.

Defendant pushes back, arguing its counsel was not aware of Plaintiff's breach of contract until it conferred with Defendant's former owners and conducted discovery. [DN 29 at 2]. But this argument is not well-taken. Defendant's lack of communication with its former owners does not excuse dilatory filings. Nor does Defendant cite any information obtained in discovery that was not already in Defendant's possession. For example, Defendant claims it only learned in discovery that Plaintiff never sent proper notice of cancellation. [*Id.*]. But the deposition testimony that Defendant cites is the testimony of *Defendant's owner*. [*Id.*; DN 29-1]. Defendant cannot claim ignorance of facts known to its owner. Likewise, the remaining "revelatory" facts that Defendant claims it learned in discovery either were within Defendant's knowledge prior to litigation or are unrelated to the breach of contract counterclaim Defendant attempts to bring. [*See* DN 29 at 2–3].

4

For these reasons, Defendant's proposed counterclaim is delayed. But delay alone is not enough. *Morse*, 290 F.3d at 800. To deny leave to amend, Plaintiff must also show it will suffer unfair prejudice if Defendant's counterclaim is permitted.

### B. Prejudice

Plaintiff's primary argument for prejudice is the discrepancy in damages that Defendant seeks, which will cause a substantial increase in discovery. [DN 24 at 9; DN 38 at 8–9]. Plaintiff's complaint seeks unpaid insurance premiums while Defendant's proposed counterclaim seeks compensatory damages flowing from the business closure. According to Plaintiff, this difference will require the Court to reopen fact discovery and will significantly increase the scope of such discovery.

Despite Rule 15's liberal standard, courts routinely deny leave to amend when a party seeks to introduce a new, expanded damages theory late in litigation. *See Priddy v. Edelman*, 883 F.2d 438, 446–47 (6th Cir. 1989); *Birchwood Conservancy v. Webb*, 302 F.R.D. 422, 426–27 (E.D. Ky. 2014); *Walker v. Bagshaw Trucking, Inc.*, No. 14-14, 2015 WL 12977345, at *1–2 (E.D. Ky. Oct. 1, 2015); *Wagner v. Jones*, No. 3:09-cv-10, 2014 WL 12714600, at *1 (S.D. Iowa Dec. 17, 2014); *McCarthy v. Komori Am. Corp.*, 200 F.R.D. 507, 509 (E.D. Pa. 2001). In *Birchwood Conservancy*, a judge in the Eastern District of Kentucky denied plaintiff's motion for leave to assert an expanded damages theory late in the case. 302 F.R.D. at 427. Plaintiff's original damages theory only sought compensatory and punitive damages related to property loss, but the proposed amended pleading also sought consequential damages. *Id*. at 426. The court denied leave to amend because "this expanded damages theory would increase the scope of discovery substantially" and "permitting [plaintiff] to so greatly expand the scope of the damages

5

it seeks at such a late stage in the litigation would be unfair and unduly prejudicial to [d]efendants." *Id*.

This litigation proceeded as a relatively straightforward case to recover unpaid insurance premiums for quite some time—there was a complaint, answer, and a significant amount of discovery. Only now, in the late stages of discovery, does Defendant attempt to inject significantly more complexity into the litigation through a counterclaim asserting a completely different damages theory than what the parties already litigated. Plaintiff convincingly argues this new theory would necessitate substantially more discovery, an argument that Defendant does not refute. The consequential damages that Defendant seeks will require additional discovery into Defendant's business structure, Defendant's profits, and the downstream contractual consequences of Plaintiff's alleged breach. Allowing such an expansive amendment at this stage in litigation would be unduly prejudicial to Plaintiff. *See Birchwood Conservancy*, 302 F.R.D. at 426. It would need to re-depose numerous witnesses, obtain expert witnesses to opine on lost profits, and file additional motions.

If Defendant's counterclaim arose from newly discovered facts, the liberal nature of Rule 15 may outweigh the significant prejudice to Plaintiff. But as stated above, Defendant knew about these facts since late 2018. This substantial delay, coupled with the prejudice to Plaintiff, requires the Court to deny leave to amend.

### III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Leave to File Counterclaim [DN 30] is **DENIED**. Defendant's counterclaim [DN 18] will be stricken from the record.

*Joseph H. McKinley*

Joseph H. McKinley Jr., Senior Judge
United States District Court

December 7, 2020

cc: Counsel of Record